### SEAUX v. G. B. ZIGLER CO.

### No. 1878.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1938.

Chappuis & Chappuis, of Crowley, for appellant.

McCoy King & Jones, of Lake Charles, for appellee.

Breazeale & Sachse, of Baton Rouge, amicus curiæ.

LE BLANC, Judge.

The plaintiff in this case has appealed from a judgment in the lower court which rejected his demand made upon the defendant, his former employer, for compensation under the Employer's Liability Law, and dismissed his suit at his costs.

The demand is for compensation at the rate of sixty five per centum of plaintiff's wages alleged to have been at the rate of $3 per day, or $21 per week, for a period of one hundred weeks, for the loss of his hearing which resulted in the impairment of the usefulness of a physical function, and which is compensable under subsection 1(d), subdivision 16 of section 8 of the Workmen's Compensation statute as per its Amendment by Act No. 242 of 1928.

In his petition the plaintiff sets out that at about three o'clock in the afternoon of April 17, 1936, while he was engaged in performing services under his employment with several fellow employees in repairing the boom of a drag-boat dredging machine on Black Bayou in the Parish of Cameron, he sustained a blow on his head from a gallon paint bucket which was thrown from the top of an oil derrick standing approximately 135 feet in height, and belonging to the Shell Petroleum Corporation, which derrick was situated at a distance of about 100 feet from the dredge boat on which he was working. He alleges that immediately after receiving the blow, and for about thirty days thereafter he gradually and

progressively lost his sense of hearing in his right ear and also in the left, when it then appeared to him for the first time that the said blow had finally developed a permanent loss of hearing from which he is presently suffering.

Whilst the answer of the defendant may be said to raise lesser issues on some questions of fact, such for instance as the date on which plaintiff claims to have suffered the injury complained of, and the number of days per week he was employed, in the matter of importance the defense presents the sharp issue as to whether any such accident as plaintiff sets out in his petition did happen at all, and if it did, whether the deafness he complains of is the result thereof.

The learned trial judge has given us the benefit of his appreciation of the testimony on these two important questions of fact, not only on the original submission of the case but also on the reconsideration thereof on plaintiff's motion for a new trial. On the first point he came to the conclusion that whilst it may have been possible, it appeared to him very improbable that plaintiff could have sustained a blow to the head, with an object such as the one involved projected from the distance stated, without leaving some external evidence of the impact, and with no greater inconvenience or pain following the same than was shown by the testimony of the various witnesses who were present when the accident is said to have happened. On the second point, he concluded that even though the plaintiff was struck in the manner set out, he had not shown by a preponderance of the testimony, and to the satisfaction of the court, that he had suffered the loss of hearing which he claims, from that injury. We might state at the very outset, that we have not been convinced by the plaintiff of any manifest error which would justify a reversal by this court of the findings of the trial judge on these determining issues of fact in the case.

Considerable confusion exists, and not a small amount of testimony was devoted concerning the date of the month on which the accident happened. The trial judge concluded that from the preponderance of the testimony, the plaintiff did show that it was on April 17, 1936, as alleged and testified to by himself and some of his witnesses, that the incident relating to a gallon bucket of paint having been thrown by an employee of the Shell Petroleum Corpora-tion from the top of one of its derricks near the location of the dredge boat on which plaintiff was working, occurred. We do not attach much importance to the date inasmuch as it does not seem to be disputed that such an occurrence did take place at about that time or within some ten days of that date. The only effect that such conflict or confusion could possibly have would be to affect the weight and the credibility of plaintiff's testimony as a whole. The vital and controlling issue relating to such a happening is whether or not the bucket did actually strike the plaintiff as he contends it did.

There were five of plaintiff's fellow employees, including the foreman, Archie Green, who were engaged with him at the moment in repairing the boom on the dredge machine, four of whom testified as witnesses called by him, and of these four, only one, Emile Guedry, testified that he saw the bucket actually strike him on the head. The other three did not see it, and merely testify that the plaintiff told them that the bucket had struck him. According to all of them, plaintiff seems to have suffered no ill effects from the blow, certainly none such as it would have produced had it been a blow of the intensity which he described. The most that he had shown, and this, by rather weak testimony it strikes us, is that he was momentarily dazed, and one of his fellow employees helped to balance him by holding his arm. This was Rodney Foreman, the nearest one to him, and who testified that plaintiff told him he was dazed, but that he did not notice anything unusual about it.

Regardless of the hour at which this occurrence took place, the undisputed testimony is that the plaintiff continued to work the rest of that day, that he worked the following day which apparently was a Saturday, and again went to work the Monday following on which day the particular job on which they were engaged was completed and the crew was laid off.

Much is said in argument before this court with reference to a remark which plaintiff says was made by his foreman, Archie Green, to the man who threw the paint bucket from the top of the oil derrick. Green is quoted by plaintiff as having shouted to that man, "Be careful where you throw that bucket, you hit a man on the head with your bucket." It appears from the record that Green had been summoned as a witness by the plaintiff, but he

was not placed on the witness stand. Plaintiff's counsel stresses the point, that Green being an employee of the defendant, and not having been called as a witness by the latter, the presumption is that his testimony would have been unfavorable to its side of the case. But having been summoned by the plaintiff as a witness, and not having been called to the witness stand by him, we do not think that the presumption counsel has reference to applies. Under the circumstances it would rather seem to us that Green might have been summoned by plaintiff to corroborate his testimony regarding the alleged statement he is said to have made, and when he is not placed on the stand at all, the inference is rather that his testimony in that respect would have been unfavorable to the plaintiff. In this connection it might be pertinent to state also that of all the witnesses who testified, Guedry is the only one who refers to Green having cried out to the man who threw the bucket, and his testimony on this point is that Green shouted, "Lookout up there, some men are working down here." The important difference in his testimony and that of the plaintiff with regard to the statement is that he makes no mention of Green having told the man that he had struck someone on the head with the bucket.

Much is said also about the blotches of paint found on the plaintiff's clothes and on the boom of the dredge boat, but these by no means convey proof that the plaintiff was struck by the bucket as certainly in its downward flight, remnants of paint might have fallen from the bucket and come to rest in just the manner described without the bucket itself having hit anyone on, or any part of the boom of the dredge machine.

Our appreciation of the entire testimony on this, the first of the two controlling questions of fact in the case, leaves us in the same state of doubt as the district judge found himself, and we are by no means convinced that the plaintiff did actually sustain a blow on the head from the paint bucket as he contends.

On the other vital issue of fact presented in the case the testimony is none the more conducive to a definite conclusion. Eight medical experts examined the plaintiff and testified in the case. One of them, Dr. McKinney, a radiologist, merely made X-ray examinations of his head with the view of determining whether there might have been sufficient trauma to cause any impairment to his hearing. The report of his examination, as shown by his testimony, is to the effect that there was no fracture or sign of trauma whatever. Dr. Henry testified concerning blood tests made by him for the purpose of ascertaining whether plaintiff might have had some infection from venereal diseases which might have had some effect on his sense of hearing. He found no showing of any. Dr. Harrell who does not profess to be a specialist in that line, did apply some tests in order to detect whether the sense of hearing was affected, and came to the conclusion that plaintiff's hearing was normal. The remaining doctors who testified were all men who specialized in diseases of the ear, nose and throat. They were Doctors LeJeune, Hume, Fuchs, Gooch and Wagner. These specialists all gave the plaintiff a careful examination and altogether may be said to have made practically all the tests known to their specialty in order to determine whether the plaintiff was deaf or not. The result of their examination as a whole may be said to show that plaintiff has almost complete deafness in his right ear and that the hearing in his left ear is affected to a certain percentage variously estimated from 25 to 40 per cent, although Dr. Fuchs was of the opinion that he had no loss of hearing at all in that ear. This doctor who was a witness for plaintiff was also of the opinion that at times he seemed to get tones through his right ear. When it is considered that in order to give a definite opinion whether plaintiff was feigning deafness or not, it was necessary, as most of them state, to rely on his own statements, as they were dealing with a matter which is altogether subjective, these doctors all hesitated to some extent, although from reading their testimony we get the impression that they all with the exception of Doctors LeJeune and Hume, believed to a certain extent that the plaintiff was malingering. They all stated in answer to a hypothetical question, that deafness may very probably result from a blow on the cranium, but, as we understand it, it would necessarily have to be a rather severe one, and one which we believe would have produced a more serious physical effect on the patient than what was suffered by the plaintiff when he claims to have been struck by this empty paint bucket.

The testimony of the ear specialists is also to the effect that there is no such thing

as one hundred per cent hearing and that although plaintiff may have serious impairment in his right ear, what is left of his hearing in the left ear is sufficient, according to some of them, to give him normal hearing in that ear.

Dr. Cross of Crowley, the first doctor plaintiff went to consult, and Dr. Taquino specialist in diseases of the ear, of New Orleans, to whom Dr. Cross first referred him, did not testify in the case, and the testimony of those doctors we have commented on comprise the entire medical testimony in the case. From it all we are left in the same state of uncertainty concerning the cause of plaintiff's deafness as we are with regard to the question of his having been struck a blow on the head as he contends.

Plaintiff produced three lay witnesses who testified that they have known him for many years and that whereas his hearing seemed to be normal before, they now detect some difficulty in having him understand them in conversation. We do not attach much importance to this character of testimony in relation to such a highly scientific matter especially when considered in the light of that of the numerous medical experts who testified in the case. Moreover, from the standpoint of lay testimony, it may be said to have been offset in a large measure by the personal observation of the district judge during the course of the trial, and commented on by him in his written reasons for judgment, from which he was led to believe that plaintiff was not suffering from any lack of hearing.

Following the well established rule to the effect that a plaintiff in a compensation case is not relieved from the usual burden of a plaintiff to make out his case to a legal certainty, by a preponderance of the testimony, the district judge, as we have already stated dismissed the plaintiff's suit, and as we also stated at the beginning there appearing to us to be no manifest error in the judgment appealed from, the same will be affirmed.

We note that the judgment imposes the costs on the plaintiff although it appears that under an order previously granted he had been permitted to prosecute his suit under the benefit of the pauper act. To that extent, the judgment may be said to be in error, and it is therefore amended by eliminating the costs with which the plaintiff was cast; otherwise, it is affirmed.